1   **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

9   Jose Gonzalez,                     No. CV-16-01346-PHX-DGC

10           Plaintiff,             **ORDER**

11   v.

12   Naumann/Hobbs Material Handling
     Corporation II Incorporated, et al.,

13

14          Defendants.

15       Plaintiff Jose Gonzalez filed a complaint against Defendants Naumann/Hobbs

16 Material Handling Corporation II, Inc., Bryan Armstrong, and Pamela Armstrong.

17 Doc. 1.  Plaintiff seeks declaratory, monetary, and other relief for alleged violations of

18 the Fair Labor Standards Act's ("FLSA") minimum wage and overtime pay requirements.

19 *Id.*  Defendants have filed a motion for summary judgment.  Doc. 18.  The motion is fully

20 briefed (Docs. 18, 27, 29), and oral argument will not aid the Court's decision. For the

21 reasons stated below, the Court will deny Defendant's motion for summary judgment.

22   **I.**     **Background.**

23       Naumann/Hobbs is incorporated and headquartered in Arizona.  Doc. 1, ¶ 10.  It

24 specializes in providing material handling equipment such as forklifts and other heavy

25 machinery.  *Id.*, ¶ 14.  Bryan Armstrong is the President, CEO, and owner of the

26 business, as well as the husband of Pamela Armstrong.  *Id.*, ¶¶ 11-13.  Plaintiff first

27 worked as a partsman for Naumann/Hobbs at Defendants' Yuma, Arizona location.  *Id.*,

28 ¶ 15; Doc. 19, ¶¶ 2, 5.  In June 2013, Plaintiff was promoted to Counter Sales Manager at

Defendants' Mexicali, Mexico facility.  Doc. 19, ¶ 5; Doc. 28, ¶ 5.  Plaintiff contends that from March 2013 until his termination he regularly worked approximately 48 hours per week, but was not paid overtime.  Doc. 19, ¶¶ 2-3; Doc. 28, ¶¶ 2-3.

The Job Description of the Counter Sales Manager, attached as Exhibit 2 to Defendant's motion, outlines Plaintiff's duties: (1) "generating counter sales documents daily for all parts request via walk in customers, emails, fax or phone call"; (2) "receiving, unpacking and storing of parts received"; and (3) "active[ly] participat[ing] in achieving the branch goals both sales and operationally."  Doc. 19 at 14.  The objective of the position was "[t]o actively promote the selling of parts over the counter for both internal and external customers to achieve the goals and performance measures set by management and to meet or exceed the customer's expectations[.]"  *Id.*

Defendants describe Plaintiff's responsibilities as follows:

> providing support to company technicians for their parts needs, creating purchase orders to order needed parts from suppliers, placing orders with suppliers, recommending to management adding stock items and controlling inventory, processing parts for entry into the operating system and performing inventory cycle counts, and being responsible for maintaining the parts warehouse for customers and coworkers.

*Id.*, ¶ 9 (emphasis omitted).  Additionally, Plaintiff was "involved in transacting business across state lines, including taking new orders from customers, ordering or receiving goods from out-of-state suppliers, handling accounting or bookkeeping for ordering or receiving goods, and handling credit card transactions."  *Id.*  Plaintiff does not dispute this description, but emphasizes that he "required supervision to perform his employment tasks, and his job responsibilities remained essentially the same [despite his promotion.]"  Doc. 28, ¶ 9.

## II.   Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.    Analysis.**

"Under the FLSA, certain employers must pay their employees time and a half for work in excess of 40 hours per week[.]"   *In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119, 1127 (9th Cir. 2007) (citing 29 U.S.C. § 207(a)(1)).  The FLSA exempts some employees from its coverage, including Administrative Employees.  29 U.S.C. § 213(a)(1).

"The FLSA delegates to the Secretary of Labor broad authority to define and delimit the scope of the administrative exemption."   *In re Farmers*, 481 F.3d at 1127. Regulations from the Secretary state that an individual is considered an Administrative Employee if he meets three criteria.  29 C.F.R. § 541.200(a).  Only the third criterion is at issue here – whether Plaintiff is an employee whose "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." § 541.200(a)(3).  This determination must be made in "light of all the facts involved in the particular employment situation."  29 C.F.R. § 541.202.  The regulations lay out a list of non-exhaustive factors:

> [1] whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; [2] whether the employee carries out major assignments in conducting the operations of the

business; [3] whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; [4] whether the employee has authority to commit the employer in matters that have significant financial impact; [5] whether the employee has authority to waive or deviate from established policies and procedures without prior approval; [6] whether the employee has authority to negotiate and bind the company on significant matters; [7] whether the employee provides consultation or expert advice to management; [8] whether the employee is involved in planning long- or short-term business objectives; [9] whether the employee investigates and resolves matters of significance on behalf of management; and [10] whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.*

Importantly*,* "[t]he exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision.  However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." *Id.* Additionally, "[w]ork must relate to 'matters of significance,' in contrast to being 'clerical' or 'routine,' or simply involving following well-established procedures found in manuals or similar sources." *Benedict v. Hewlett-Packard Co.*, 314 F.R.D. 457, 476 (N.D. Cal. 2016).

Defendants contend that the Counter Sales Manager position fits squarely within one of the exemption examples provided in the regulations: "purchasing agents with authority to bind the company on significant purchases." Doc. 18 at 4 (quoting 29 U.S.C. § 541.203(f)); 29 U.S.C. § 541.203(f).  As a result, Defendants contend, Plaintiff "was not entitled to be paid overtime, [and] Defendant is not liable for violating the [FLSA]." Doc. 18 at 3.

As Counter Sales Manager, Plaintiff did not have authority to decide company goals or performance measures; they were decided by upper management.  Doc. 30-1 at 14; Doc. 28-3 at 2.  Additionally, while Plaintiff could determine if he wanted to arrive at work early or leave late, he had no influence over the hours of operation of the Mexicali

branch.   Doc. 30-1 at 26.   The hours were determined by upper management.   *Id.*
Plaintiff had some input in the budget of the Mexicali facility, but the budget was
ultimately determined by upper management.   *Id.* at 27.   Defendants do not provide any
evidence that Plaintiff had supervisory control – that he was involved in hiring, firing, or
write-ups of other employees.   *Id.*   Importantly, Plaintiff's supervisor, Ken McKurdie,
testified that, on an average day, the counter sales manager is "looking up the parts and
selling the parts [] the majority of the time."   *Id.* at 28.   Mr. McKurdie acknowledged that
these activities fall within the regular duties of a partsman.   *Id.*

Defendants rely primarily on several duties Plaintiff assumed upon promotion.
First, Plaintiff could adjust the prices at which he sold parts to customers, as long as he
maintained a gross profit on each item.   *Id.* at 17.   Additionally, Plaintiff was expected to
review client files and contact customers to make sales, as well as complete inventory
cycle counts when instructed by superiors.   Doc. 29 at 3, 5.   Finally, Plaintiff could order
parts from suppliers in response to requests from customers, and he had discretion to
stock any inventory sold by the company.   *Id.* at 3.   The Job Description reflects,
however, that Plaintiff could only recommend to upper management that *new* items be
stocked or that items be removed from stock.   Doc. 28-3.   What is more, when asked
which of Plaintiff's duties directly related to the management and general business
operations of Naumann/Hobbs, Mr. McKurdie identified "the filing of the parts reqs, and
. . . the filing of your returns, keeping basically the records on the parts department."
Doc. 30-1 at 22-23.   The regulations make clear, however, that "[t]he exercise of
discretion and independent judgment . . . does not include clerical or secretarial work,
recording or tabulating data, or performing other mechanical, repetitive, recurrent or
routine work. An employee who simply tabulates data is not exempt[.]"   29 C.F.R. §
541.202

These facts, viewed in the light most favorable to Plaintiff, are not sufficient to
establish as a matter of undisputed fact that Plaintiff's "primary duty includes the
exercise of discretion and independent judgment with respect to matters of significance."

29 U.S.C. § 541.200(a)(3).  Rather, it seems that the majority of Plaintiff's time on an average day was spent looking up and selling parts to customers, a duty shared with the partsmen.  Doc. 30-1 at 28.  While Plaintiff exercised some discretion as to the types and quantity of stocked items at the Mexicali facility, and as to the price at which some parts were sold, it is not clear that this discretion was substantial or related to matters of real significance.  Defendants provide no evidence concerning the financial impact of Plaintiff's decisions on the business as a whole, and it therefore is not possible to determine whether they amount to "matters of significance."  *Id.*  Nor does the evidence show that Plaintiff carried out major projects for Naumann/Hobbs, or that he could bind the company in ways that would have a significant financial impact.

The Court cannot conclude as a matter of undisputed fact that Plaintiff exercised discretion and independent judgment with respect to matters of significance and thus met the third requirement for exemption as an Administrative Employee.  The Court therefore must deny Defendants' motion.

**IT IS ORDERED:** Defendants' motion for summary judgment (Doc. 18) is **denied.**

Dated this 17th day of January, 2017.

David G. Campbell
United States District Judge